UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DEANTWUAN WOODS,

        Plaintiff,

v.

HEIDI E. WASHINGTON, et al.,

        Defendants.
_____/

Case No. 2:23-cv-22

Hon. Hala Y. Jarbou

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against all Defendants other than the unknown Corrections Officer who, on February 28, 2021, held Plaintiff on the ground with the officer's knee on Plaintiff's neck. Plaintiff's allegations relating to that officer's use of excessive force suffices to state a claim. However, without additional identifying information, the Court cannot order service. Accordingly, Plaintiff shall,

within 28 days, provide sufficient identifying information to permit service of the complaint on that officer.

## Discussion

### I.     Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains, however, occurred at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. Plaintiff sues Michigan Governor Gretchen Whitmer, Michigan Attorney General Dana Nessel, and MDOC Director Heidi E. Washington. Plaintiff also sues former LMF Warden Sarah Schroeder. Plaintiff reports that Defendant Schroeder was the warden at LMF during the events at issue in his complaint. Plaintiff also notes that Defendant Schroeder is now the warden at MBP where Plaintiff is presently housed. Plaintiff also sues former MBP Warden Erica Huss, LMF Deputy Warden Unknown Pelkey, MBP Deputy Warden Jerry Hoult, and LMF Corrections Officer Kim Hill. Finally, Plaintiff sues "all . . . employees [at] both prison[] facilities," apparently including Resident Unit Managers, Prisoner Counselors, Grievance Coordinators, Sergeants, Lieutenants, Captains, Assistant Deputy Wardens, Inspectors, Business Managers, Accounting Technicians, Health Unit Managers, Classification Directors, Medical and Mental Health Providers, Law Librarians, Institutional Chaplains, Food Service Directors, and Corrections Officers. (Compl., ECF No. 1, PageID.23–24.)

Plaintiff alleges that on February 28, 2021, he was in his unit's small yard. He became involved in a fight with another inmate, Cunningham. Plaintiff reports that an unknown Corrections Officer pulled Plaintiff off the other inmate and that Plaintiff went to the ground willingly. Plaintiff reports that he was not resisting, other officers arrived, and both prisoners were handcuffed.

Even though the fracas was at an end, Plaintiff claims that Defendant Hill and the unknown Corrections Officer told Plaintiff to stop resisting. Defendant Hill proceeded to punch Plaintiff on the side of his face and bang his head to the ground. Hill, using a racial epithet, told Plaintiff to shut up. Plaintiff blacked out. When Plaintiff awoke, there was an unknown Corrections Officer with his knee on the back of Plaintiff's neck, choking Plaintiff. Plaintiff passed out again. When he woke up, he was in segregation.

That same day, Defendant Hill visited Plaintiff in segregation. Plaintiff asked Hill to call healthcare because Plaintiff's head hurt. Plaintiff also asked for Motrin or Advil. Hill refused, using foul language and repeating the racial epithet.

All of Plaintiff's factual allegations appear on two pages of his complaint. (*Id.*, PageID.27–28.) The preceding pages are either empty pages of the court-approved complaint form (*id.*, PageID.1–4), almost incomprehensible legal citations and argument (*id.*, PageID.5–22, 25–26), or identification of the parties (*id.*, PageID.23–24). The pages that follow the factual allegations include a statement of claims—violations of the Eighth Amendment and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131—and Plaintiff's requests for relief—unspecified injunctive relief, $2,000,000 in compensatory damages, and $4,000,000 in punitive damages. (*Id.*, PageID.29–32.)

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.    Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and

wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).

Plaintiff's allegations implicate two distinct Eighth Amendment violations: the use of excessive force in the unit yard and the denial of medical care while Plaintiff was in segregation.

### A.     Excessive Force

Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation, one that is "responsive to

5

'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Plaintiff alleges that while he lay on the ground handcuffed and not resisting, Defendant Hill punched Plaintiff on the side of the face and hit Plaintiff's head on the ground, and that the unknown Corrections Officer placed his knee on Plaintiff's neck choking him. Certainly, based upon Plaintiff's allegations, the force used was excessive and without penological justification.

But Plaintiff's allegations are not the only facts Plaintiff has presented to the Court. Plaintiff also offers the Class I Misconduct Hearing Report relating to the incident. (Misconduct Hr'g Report, ECF No. 1-2, PageID.37.) That report tells an entirely different story. According to the hearing officer, based on the evidence, including a video:

> On 2-28-2021 at 0713 hrs in the Maple unit small yard the reporting officer observed prisoner Cunningham and prisoner Woods in a physical confrontation striking each other with closed fists. I find that prisoner Woods did intend to injure prisoner Cunningham. Both prisoners were told to stop fighting and did not and Officer K. Hill pushed prisoner Woods off of prisoner Cunningham. Officer K. Hill tried to restrain prisoner Woods and he pulled his arm out of office K. Hill's grasp. I find that prisoner Woods ['] actions are a physical resistance and a physical interference with an employee and would not allow officer K. Hill to restrain him and did resist which is supported by the video. Prisoner Woods is not believed in his statement he did not resist because he wou[l]d not allow Officer [K.] Hill to restrain him and pulled his arm away and he continued to yell and spit at prisoner Cunningham and officer K. Hill then gained control of his head. I find no . . . credible evidence from the video that officer [K.] Hill was banging prisoner Woods['] head on the ground as he claims but was holding it down to prevent him from spitting at prisoner Cunningham. I find no credible evidence that officer [K.] Hill has lied or fabricated his statements. The reporting officer is clear and consistent in his statement and found credible. The charges are upheld.

6

(*Id.*) Those charges included a charge that Plaintiff assaulted and battered Defendant Hill. The hearing officer defined assault and battery to be "[i]ntentional, non-consensual touching of another []person done either in anger or with the purpose of abusing or injuring another; physical resistance or physical interference with an employee." (*Id.*)

Under certain circumstances—circumstances that are present in this case—the facts stated in that report have preclusive effect in this Court. *Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013). In *Peterson*, the Sixth Circuit considered whether a hearing officer's factual finding that the plaintiff grabbed the defendant's hand should be accorded preclusive effect on the plaintiff's Eighth Amendment claim. Peterson claimed that Corrections Officer Johnson started a scuffle by reaching into Peterson's cell to pull Peterson out and assault him. Corrections Officer Johnson claimed that Peterson initiated the scuffle by grabbing Johnson's hand and pulling him into the cell. *Id.* at 908. Corrections Officer Johnson wrote a major misconduct report against Peterson for assaulting and battering Johnson; Peterson defended by claiming that Johnson was the assaulter and batterer. The hearing officer heard testimony, reviewed affidavits, and reviewed a video of the incident. The hearing officer concluded that Peterson was guilty of assault and battery and that Corrections Officer Johnson did not start the melee. In that sense, Plaintiff's case is very much like Peterson's.

In resolving the question, the court looked to *University of Tennessee v. Elliott*, 478 U.S. 788 (1986), which explained that "when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." 478 U.S. at 789 (citation, internal quotation marks, and edits omitted). The *Elliott* Court identified four criteria for according preclusive effect to the

7

administrative factual findings: (1) whether the state agency acted in a judicial capacity; (2) whether the hearing officer resolved a disputed fact that was properly before her; (3) whether the party to be precluded had an adequate opportunity to litigate the factual dispute; and (4) if the other three criteria are satisfied, the finding is given the same preclusive effect as it would be given in state courts. *Id*. at 912–13. After applying the four *Elliott* criteria to the MDOC's major misconduct hearing process, the Sixth Circuit concluded that Michigan courts would grant preclusive effect to the hearing officer's finding that the plaintiff grabbed the defendant's hand. *Peterson*, 714 F.3d at 917.

The Sixth Circuit subsequently qualified the *Peterson* holding in *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014). In *Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018), the Sixth Circuit considered all of those authorities and further clarified the limitations of the preclusion doctrine, as follows:

> In *Peterson*, the Court considered, as a matter of first impression, whether a hearing officer's factual determination at a Michigan major misconduct hearing has preclusive effect in litigation brought by a prisoner under § 1983. *Id*. at 908, 911. The Court concluded that, because all four requirements were met, the "hearing officer's factual finding that [the prisoner] was the one who grabbed [the officer's] hand precludes a contrary finding in federal court." *Id*. at 917. In *Roberson v. Torres*, the Court considered the same issue, and identified the four requirements listed above. 770 F.3d 398, 403–04 (6th Cir. 2014). The Court said that Peterson does not mean that "any factual findings by a hearing officer in a major-misconduct hearing in a Michigan prison are to be accorded preclusive effect." *Id*. at 404. "*Peterson* is not a blanket blessing on every factual finding in a major-misconduct hearing." *Id*.
>
> > Indeed, the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so—not just in theory, but in practice. It likewise turns on the court's sense of justice and equity, which may require a case-by-case analysis of surrounding circumstances.
>
> *Id*. at 404–05 (internal citations and quotation marks omitted). The Court declined to decide the preclusion question[ ] and remanded the case to the district court to

8

>consider the argument for the first time. *Id*. at 405. The Court instructed the district court to "give particular attention to the fairness and accuracy of the factual findings made by the major-misconduct hearing officer." *Id*. The Court advised that "[n]umerous inquiries may be relevant to the district court's analysis," like "why the hearing officer refused to review the alleged video of the incident, whether the hearing officer provided a sufficient and reasonable basis for her factual findings, and whether the testimony of other witnesses corroborated the accounts provided by either [the prisoner] or [the officer]." *Id*. at 405.

*Maben*, 887 F. 3d at 259.

All of the factors identified in *Peterson*, *Roberson*, and *Maben*—including this Court's sense of justice and equity—support giving the hearing officer's factual findings preclusive effect. Plaintiff's claim that he was handcuffed and on the ground when Defendant Hill purportedly hit him is directly contradicted by the findings. Plaintiff's claim that he was not resisting at the time that Defendant Hill purportedly hit him is directly contradicted by the findings. Plaintiff's claim that Defendant Hill banged Plaintiff's head on the ground is directly contradicted by the findings. And the hearing officer specifically found that Plaintiff's account was not credible. The preclusive findings of the hearing officer foreclose Plaintiff's excessive force claim against Defendant Hill.

Based on Plaintiff's allegations, his claim that an unknown officer had his knee on Plaintiff's neck occurred after Plaintiff's assault and battery of Hill. It does not appear that the hearing officer resolved that potentially disputed fact and it would not necessarily have to be resolved to determine whether Plaintiff had committed the assault and battery. Accordingly, accepting that allegation as true, the Court concludes that Plaintiff's allegations suffice to state an Eighth Amendment excessive force claim against the Defendant Unknown Officer at this early stage of the proceedings.

### B. Deliberate Indifference to a Serious Medical Need

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary

standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's

10

failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

The entirety of Plaintiff's allegations regarding his deliberate indifference medical claim reads as follows:

> The same day [as the yard fight] Mr. CO Kim Hill came to the hole. I ask him to call health care and that my head hurts really bad. [H]e said ["]f[***] off.["] I then asked for a M[otri]n or Advil and he said ["]no [racial epithet."]

(Compl., ECF No. 1, PageID.28.) Although Defendant Hill's language is reprehensible, and may well evidence deliberate indifference to Plaintiff's condition, it does not permit the inference that Hill was deliberately indifferent to a serious medical need.

Plaintiff says only that his head hurt. The fact that Plaintiff's head hurt—either because of his encounter with Cunningham, Defendant Hill, or Defendant Unknown Corrections Officer—does not support an inference that Plaintiff suffered a serious medical need nor does it support an

11

inference that Defendant Hill was aware of a serious medical need and then disregarded it. That is particularly so when the proposed treatment denied was over-the-counter pain medication. Plaintiff's allegations also fail to reveal whether Hill's refusal resulted in any meaningful delay in receiving treatment for Plaintiff's hurting head. Accordingly, Plaintiff has failed to state a claim against Defendant Hill for deliberate indifference to a serious medical need.

## IV.  ADA Claim

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).[1] In order to state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532–33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). The term "qualified individual with a disability" includes "an individual with a disability who, with or

---

[1] Often claims under the ADA are paired with claims under Section 504 of the Rehabilitation Act (RA), 29 U.S.C. § 794(a). That section provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson v. Williamson Cnty.*, 219 F.3d 555, 557 n.3 (6th Cir. 2000) (citing *Maddox v. University of Tenn.*, 62 F.3d 843, 846, n. 2 (6th Cir. 1995)). Plaintiff does not raise a claim under the RA.

12

without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs); *Diemond v. Mich. Dep't of Corr.*, No. 18-1344, 2018 WL 7890769, at *2 (6th Cir. Oct. 31, 2018) ("The ADA and RA do apply to state prisons."). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). Plaintiff has named Defendants in their individual capacities. Therefore, he has failed to state an ADA claim against them.

Even if Plaintiff sued Defendants in their official capacity, however, his factual allegations fail to suggest that Defendants denied adequate medical treatment because of any disability that Plaintiff may suffer. As the United States Court of Appeals for the Second Circuit has explained, "[w]here the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'" *United States v. Univ. Hosp.* 729 F.2d 144, 157 (2d Cir. 1984). Indeed, that distinction explains why the ADA and the RA are not appropriate federal causes of action to challenge the sufficiency of medical treatment. *See, e.g.*, *Baldridge-El v. Gundy*, No. 99-2387, 2000 WL 1721014, at *2 (6th Cir. Nov. 8, 2000) ("[N]either the RA nor the ADA provide a cause of action for medical malpractice."); *Centaurs v. Haslam*, No. 14-5348, 2014 WL 12972238, at *1 (6th Cir. Oct. 2, 2014) ("Although [Plaintiff] may have a viable civil rights claim under 42 U.S.C. § 1983 for inadequate medical care, he has failed to state a prima facie case under the parameters of the ADA."); *Powell v. Columbus Medical*

*Enterprises, LLC*, No. 21-3351, 2021 WL 8053886, at *2 (6th Cir. Dec. 13, 2021) ("This dissatisfaction necessarily sounds in medical malpractice, which, 'by itself, does not state a claim under the ADA.'").[2] Plaintiff, therefore, has failed to state claims against Defendants for violations of the ADA.

## V.  Claims Relating to Grievance Processing or Supervisory Liability

Plaintiff makes passing reference to the roles some or all of the Defendants played in failing to process to Plaintiff's satisfaction a grievance regarding the yard fight or Plaintiff's medical treatment thereafter. Plaintiff does not identify a specific constitutional right that was violated.

As an initial matter, the United States Court Appeals for the Sixth Circuit has held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reason is that there must be active unconstitutional behavior. Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *Id.* Additionally, in unpublished decisions, the Sixth

---

[2] S*ee also Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006) ("Iseley . . . claims that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions."); *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) ("The ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'"); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he [ADA] would not be violated by a prison's simply failing to attend to the medial needs of its disabled prisoners."); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) ("[A] lawsuit under the Rehab Act or the Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions."); *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1144 (10th Cir. 2005) ("[I]t is well settled that the ADA [and the RA do] not provide a private right of action for substandard medical treatment." (internal quotation marks omitted)); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) ("The Rehabilitation Act, like the ADA, was never intended to apply to decisions involving . . . medical treatment.").

14

Circuit has held that a prisoner's allegation that a defendant improperly denied, or responded to, a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998); *see also Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994) (discussing that there is no constitutional right to a grievance procedure).

Furthermore, to the extent that Plaintiff seeks to hold any of these Defendants liable for the actions of their subordinates, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, as discussed above, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific

15

> incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any facts showing that any Defendant other than Hill or Unknown Corrections Officer participated directly in misconduct, encouraged or condoned the conduct of subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff's conclusory allegations suggesting that all of the Defendants are somehow liable for the actions of Hill or Unknown Corrections Officer is insufficient to demonstrate that the other Defendants were personally involved in the alleged violations of Plaintiff's constitutional rights. Because Plaintiff has failed to allege that Defendants other than Hill or Unknown Corrections Officer engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against the other Defendants.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint against all Defendants other than Unknown Corrections Officer will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss for failure to state a claim all of Plaintiff's claims against Defendant Unknown Corrections Officer, except Plaintiff's claim that Unknown Corrections Officer held his knee on Plaintiff's neck, choking him, on February 28, 2021. With regard to that claim, however, Plaintiff has failed to provide sufficient identifying information to permit the Court to order service of the complaint. Plaintiff shall have 28 days to provide

16

identifying information sufficient for service of the complaint on Defendant Unknown Corrections Officer or face dismissal of his action against that Defendant without prejudice.

An order consistent with this opinion will be entered.

Dated: March 14, 2023                         /s/ Hala Y. Jarbou
                                              HALA Y. JARBOU
                                              CHIEF UNITED STATES DISTRICT JUDGE